# In the United States Court of Federal Claims

No. 21-1279
(Filed Under Seal: March 31, 2022)
(Reissued for Publication: April 26, 2022)[1]

| | | |
|---|---|---|
| ****************************************** | | |
| SWIFT & STALEY, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Bid Protest; Motion for Judgment on the Administrative Record; SBA Size Determination; Motion to Supplement the Administrative Record; Affiliation; Negative Control. |
| THE UNITED STATES, | * | |
| | * | |
| Defendant, | * | |
| | * | |
| and | * | |
| | * | |
| AKIMA INTRA-DATA, LLC, | * | |
| | * | |
| Defendant-Intervenor. | * | |
| ****************************************** | | |

*Richard Paul Rector*, DLA Piper US LLP, Washington, DC, counsel for Plaintiff.

*Evan Wisser*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

*Stephen Philip Ramaley*, Miles & Stockbridge PC, Tysons Corner, VA, counsel for Defendant-Intervenor.

## ORDER AND OPINION

**DIETZ, Judge.**

      Swift & Staley, Inc. ("SSI") challenges a decision by the Office of Hearings and Appeals ("OHA") of the Small Business Administration ("SBA") affirming a size determination by an SBA Area Office that SSI is "other than small" and, consequently, ineligible for a small-business set-aside contract. On remand from this Court, OHA affirmed the Area Office's size determination on the basis that SSI is affiliated with another concern, Portsmouth Mission

---

[1] This Order and Opinion was filed under seal on March 31, 2022, *see* ECF No. 78, in accordance with the Protective Order entered on April 28, 2021, *see* ECF No. 13. The parties were given an opportunity to identify protected information, including source selection information, proprietary information, and confidential information, for redaction. The Plaintiff filed a joint status report on April 14, 2022, with proposed redactions. ECF No. 91. Plaintiff proposes redactions of certain confidential information contained in the Order and Opinion. *Id*. at 1. The status report indicates that Defendant and Defendant-Intervenor do not propose redactions. *Id*. at 2. The Court accepts Plaintiff's proposed redactions. All redactions have been blackened out.

Alliance, LLC ("PMA"), through negative control. SSI argues that OHA violated a procedural regulation that prohibits OHA from deciding substantive issues first raised on appeal. Alternatively, SSI argues that OHA's finding of affiliation is arbitrary and capricious. Because the Court finds that OHA did not violate its procedural regulation and that OHA's finding of affiliation is not arbitrary or capricious, Plaintiff's motion for judgment on the administrative record is **DENIED**, and Defendant's and Defendant-Intervenor's respective cross-motions for judgment on the administrative record are **GRANTED**.

In support of its challenge, SSI requests that the Court supplement the administrative record with a declaration by the President of SSI offered as evidence to demonstrate that SSI does not exert negative control over PMA. Because the Court can effectively perform judicial review of the decision by OHA based on the existing record, Plaintiff's motion to supplement is **DENIED**, and Defendant-Intervenor's motion to strike is **GRANTED**.

## I.  BACKGROUND

### A.  Statutory and Regulatory Framework

Under the Small Business Act, the SBA is responsible for promulgating "detailed definitions or standards by which a business concern may be determined to be a small business concern." 15 U.S.C. § 632(a)(2)(A) (2018). In accordance with its statutory authority, the SBA sets "size standards" that determine if a business concern is eligible for "[g]overnment programs and preferences reserved for 'small business' concerns." 13 C.F.R. § 121.101(a) (2020).[2] The SBA establishes size standards "for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS)." *Id*.

When bidding on a contract designated for a small business, "[a] concern must not exceed the size standard for the NAICS code specified in the solicitation." 13 C.F.R. § 121.402(a). A concern "must self-certify it is small under the size standard specified in the solicitation." *Id*. § 121.405(a). SBA regulations require that a concern determine its affiliations and include the average annual receipts of its affiliates when calculating its size. *See id*. §§ 121.103, 121.104(d)(1). Business concerns are considered affiliates when "one controls or has the power to control the other." *Id*. § 121.103(a)(1).

An offeror in a procurement may protest a concern's self-certification. 13 C.F.R. § 121.1001(a)(1)(i). A size protest "must be sufficiently specific to provide reasonable notice as to the grounds upon which the protested concern's size is questioned." *Id*. § 121.1007(b). The protestor initially files the size protest with the contracting officer, who then forwards it to the appropriate Area Office. *Id*. § 121.1003. The Area Office will make a size determination "based primarily on the information supplied by the protestor [and] . . . the concern whose size status is at issue." *Id*. § 121.1009(b). However, the size determination "may also be based on grounds not raised in the protest." *Id*. A party can appeal an Area Office's size determination to OHA. *See id*. § 134.102(k). OHA reviews an Area Office size determination for "clear error of fact or law." *Id*.

---

[2] Except where stated otherwise, the Court cites to SBA regulations in effect when SSI submitted its written self-certification on April 16, 2020. *See* 13 C.F.R. § 121.404(a); AR 78, 83.

2

§ 134.314. An OHA decision on an appeal "is the final decision of the SBA and becomes effective upon issuance." *Id*. § 134.316(d).

### B. Factual Background

SSI is an employee-owned company based in Paducah, Kentucky. Am. Compl. ¶ 9, ECF No. 53. SSI has performed recurring facility support service contracts for the Department of Energy ("DOE") at the Paducah gaseous diffusion plant since 2005. Pl.'s Mem in Supp. of 2nd Mot. for J. on the Admin. R. at 3, ECF No. 56 [hereinafter Pl.'s 2nd Mem.]. In 2015, SSI and another company, North Wind Solutions, LLC ("North Wind"), formed PMA, a populated joint venture,[3] for the sole purpose of performing infrastructure support services at a gaseous diffusion plant located in Portsmouth, Ohio. *See* Am. Compl. ¶ 18; AR 3741.[4] SSI holds a ▮▮▮ percent (▮▮) ownership interest in PMA and represents ▮ of ▮ PMA board members. AR 3713, 3775, 3826, 4065-66. In 2016, DOE awarded PMA a contract to provide infrastructure support services at the Portsmouth gaseous diffusion plant. AR 3722. This is PMA's only contract. AR 3722-23.

DOE issued a solicitation on February 3, 2020, for a new infrastructure support services contract at the Paducah plant (the "Solicitation"). AR 88, 113. The Solicitation was set-aside for a small business concern that qualified under the applicable size standard, which applied a $41.5 million size limit. AR 943. SSI submitted a proposal on April 16, 2020. AR 78, 83, 3855. For its self-certification, SSI calculated its size to be ▮▮▮▮▮▮▮. AR 3714. SSI did not count PMA as an affiliate in making its self-certification and, accordingly, did not include PMA's average annual receipts in its size calculation. *See* AR 3030, 4097-98; Pl.'s 2nd Mem. at 5. DOE awarded the contract to SSI on December 10, 2020. AR 9.

### C. Procedural History

#### 1. Initial SBA Proceedings

On December 17, 2020, Akima Intra-Data, LLC ("Akima"), an eligible but unsuccessful offeror, filed a protest challenging SSI's size. AR 3. Akima argued that, when SSI's "receipts from its own business activity" are combined with its "significant ownership interest" in PMA, SSI exceeds the size standard for the Solicitation. *Id*. According to Akima, the rules governing the exception to affiliation for joint ventures required SSI to assume a proportionate share of PMA's annual receipts when calculating its size. AR 5-6 (citing 13 C.F.R. § 121.103(h)(5)).

In response, SSI asserted that PMA, a populated joint venture, is not "covered by the exception to affiliation for joint ventures under 13 C.F.R. § 121.103(h)" and that, therefore, SSI is not "subject to the corresponding obligation at 13 C.F.R. § 121.103(h)(5) to include in its receipts its proportionate share of receipts from PMA." AR 3029. Recognizing that its

---

[3] A populated joint venture is a joint venture that uses its own employees to perform the contract, whereas an unpopulated joint venture uses employees of the joint venture partners to perform the contract. *See* 13 C.F.R. § 121.103(h); *Senter, LLC v. United States*, 138 Fed. Cl. 110, 112 (2018).

[4] The Court cites to the Administrative Record, filed by the government at ECF Nos. 22, 51, and 55, as "AR ___."

relationship to PMA may be subject to the general principles of affiliation if it is not covered by the joint venture exception, SSI also asserted that SSI is not affiliated with PMA. AR 3027, 3029.

The Area Office issued its size determination on January 13, 2021, finding that SSI is "other than small." AR 3790. The Area Office concluded "that since PMA is a joint venture, actively generating revenues for its owners which include SSI, SSI is required to follow the regulation . . . [and] SSI's proportionate share of PMA's receipts must be included when calculating SSI's size in accordance with 13 C.F.R. § 121.103(h)(5)." AR 3789. The Area Office determined that SSI was required to assume a ▓▓▓▓▓ percent (▓▓) proportionate share of PMA's receipts based on SSI's ownership interest, and, as a result, SSI exceeded the $41.5 million limit to qualify as a small business concern for the Solicitation. AR 3790. In making its determination, the Area Office noted that SSI's minority ownership interest does "not otherwise creat[e] affiliation between SSI and PMA[.]" AR 3789.

SSI appealed the Area Office's size determination to OHA. AR 3799-843. In its appeal, SSI argued that the Area Office's size determination was "based on clear errors of law" because "two small business concerns that own interests in a populated [joint venture] do not have to assume a proportionate share of the [joint venture]'s annual receipts, but they do run the risk of being treated as affiliates if the requisite control elements are present." AR 3800. However, finding no clear error in the Area Office's analysis, OHA affirmed the size determination. AR 3909.

2.  Previous Litigation Before this Court

SSI filed a protest in this Court on April 23, 2021, seeking to reverse OHA's decision. *See generally* Compl., ECF No. 1; *Swift & Staley, Inc. v. United States*, 155 Fed. Cl. 630 (2021). SSI reasserted its argument that it is not required to assume a proportionate share of PMA's receipts under the joint venture exception to affiliation. *See* Pl.'s Mem. in Supp. of Mot. for J. on the Admin. R. at 10, ECF No. 26 [hereinafter Pl.'s 1st Mem.]. SSI further stated that "because SSI's relationship with PMA and North Wind does not fall within the exception to affiliation for joint ventures under 13 C.F.R. § 121.103(h), OHA should have considered whether SSI and PMA fell under the general rules of affiliation." *Id.* at 16. With respect to affiliation, SSI explained in a footnote that SSI is not affiliated with PMA because "nothing in PMA's operating agreement permits SSI to *exert negative control* over PMA, like preventing a quorum or blocking actions by the ▓▓ North Wind board members." *Id.* at 16 n.8 (emphasis added).

In its opinion dated August 20, 2021, the Court agreed with SSI's argument regarding the inapplicability of the joint venture exception to affiliation. The Court held that SSI could not be required to assume a proportionate share of PMA's receipts under the plain language of § 121.103(h)(5) because, at the time of SSI's size self-certification, the regulation applied only to unpopulated joint ventures. *See Swift & Staley*, 155 Fed. Cl. at 638. However, the Court recognized that this narrow ruling did not resolve the larger issue of how, if at all, SSI should account for its interest in PMA in calculating SSI's size for the Solicitation, so the Court vacated OHA's decision and remanded the case to OHA to further consider SSI's size status consistent with the Court's opinion. *Id.* at 639.

4

### 3. SBA Proceedings Following Remand from the Court

Following remand from the Court, OHA further remanded the case to the Area Office with instructions to prepare an amended version of the original size determination in accordance with the Court's decision. AR 3956. The Area Office issued an amended size determination on September 8, 2021. AR 3974-81. In its amended size determination, the Area Office concluded again that SSI was "other than small" but on different grounds than its original size determination. AR 3981. The Area Office stated again that "PMA is not an affiliate" of SSI. AR 3980. However, it concluded that "PMA is a source which generates revenue for SSI which must be included in SSI's calculation of average annual receipts in accordance with 13 C.F.R. § 121.104(a)." *Id.* The Area Office then stated that "SSI's size for the instant procurement is derived from itself and the applicable receipts from PMA[,]" which, when combined, result in SSI's being "other than small[.]" AR 3981.

After receiving the Area Office's amended size determination, OHA ordered the parties to submit comments "address[ing] whether [SSI] may be affiliated with [PMA] through negative control, based on provisions in PMA's operating agreement." AR 4000. In its comments, SSI argued that the issue of affiliation through negative control may not be decided by OHA because it was not raised during the initial Area Office size determination, and § 134.316(c) prohibits OHA from deciding substantive issues raised for the first time on appeal. AR 4099. SSI further argued that "even if OHA were to consider the issue of affiliation through negative control, the terms of the PMA operating agreement do not give SSI negative control rights sufficient to establish affiliation." AR 4101.

OHA issued a decision on November 1, 2021, affirming the Area Office's size determination. *See* AR 4786-803. In reaching its decision, OHA concluded that it could properly consider and decide whether SSI and PMA are affiliated through negative control. *See* AR 4797-98. OHA also concluded that "PMA's Operating Agreement plainly does give SSI the power to exert negative control over PMA." AR 4797-800. Therefore, SSI must assume all of PMA's average annual receipts, which causes SSI to exceed the size limit for the Solicitation. AR 4800-01. While OHA found that several aspects of the Area Office's analysis in the amended size determination were erroneous, OHA concluded that "[t]he Area Office . . . ultimately was correct in concluding that SSI is not a small business for the instant procurement." AR 4803.

### 4. Post-Remand Proceedings Before this Court

On December 3, 2021, SSI amended its complaint to challenge OHA's decision on remand. *See* Am. Compl. SSI subsequently filed a motion for judgment on the administrative record ("MJAR") requesting that the Court enter declaratory judgment finding that OHA's decision that SSI is "other than small" was "arbitrary, capricious, an abuse of discretion, and contrary to law," that "SSI is a small business concern" under the Solicitation's size standard, and that "SSI is eligible to perform the Paducah contract." Pl.'s 2nd Mem. at 39. Along with its MJAR, SSI filed a motion to supplement the administrative record with a declaration from SSI's President attached as an exhibit to SSI's MJAR. *See* Pl.'s 2nd Mem. Ex. A, ECF No. 57-1 [hereinafter Pl.'s Decl.]; Pl.'s Mot. to Suppl. Admin. R., ECF No. 58 [hereinafter Pl.'s Mot. to Suppl.].

5

In response, the government and Akima each filed a cross-MJAR arguing that OHA appropriately considered whether SSI is affiliated with PMA because affiliation and negative control were not new issues in this case and that OHA's decision that SSI and PMA are affiliated through negative control is reasonable and consistent with OHA precedent. *See generally* Def.'s Cross-Mot. for J. on the Admin. R., ECF No. 59 [hereinafter Def.'s Cross-MJAR]; Def.-Intervenor Cross-Mot. for J. on the Admin. R., ECF No. 62 [hereinafter Def.-Intervenor's Cross-MJAR]. With respect to SSI's motion to supplement the administrative record, the government opposed supplementation arguing that the declaration will not aid the Court because the information contained in the declaration was not made available to OHA. *See* Def.'s Resp. to Mot. to Suppl. at 1-3, ECF No. 60. Akima moved to strike the declaration because it is extra-record evidence that is not necessary for effective judicial review. *See* Def.-Intervenor's Mot. to Strike & Resp. to Mot. to Suppl. at 2, ECF No. 62 [hereinafter Def.-Intervenor's Mot. to Strike]. The Court held oral argument on February 10, 2022. *See* Order, ECF No. 65.

## II.   LEGAL STANDARDS

A party may move for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"). Under RCFC 52.1, the court "make[s] factual findings from the record evidence as if it were conducting a trial on the record." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1354 (Fed. Cir. 2005). The inquiry before the court is whether a decision-making body, "given all the disputed and undisputed facts appearing in the record, acted in a manner that complied with the legal standards governing the decision under review." *Williams v. United States*, 116 Fed. Cl. 149, 157 (2014). "The focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the [Administrative Procedure Act ("APA")]." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009).

"[C]hallenges to decisions by the OHA fall within the scope of jurisdiction granted under the Tucker Act because such challenges are actions 'in connection with a proposed procurement.'" *Swift & Staley*, 155 Fed. Cl. at 635 (citing *Palladian Partners v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015)). This Court reviews agency decisions in bid protests using the standard of review set forth in the APA. 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). To succeed, the protestor must show that the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *Bannum*, 404 F.3d at 1351. Under this standard, the Court may set aside a procurement activity if either: "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332.

## III.   DISCUSSION

SSI argues that OHA violated 13 C.F.R. § 134.316(c), which prohibits OHA from deciding substantive issues first raised on appeal, when it decided whether SSI is affiliated with PMA through negative control. Alternatively, if the Court finds that OHA did not violate § 134.316(c), SSI argues that OHA's determination that SSI and PMA are affiliated through

negative control is arbitrary and capricious. For the reasons below, the Court finds that OHA did not violate § 134.316(c) and that OHA's determination that SSI is affiliated with PMA through negative control is not arbitrary or capricious.

### A. OHA Did Not Violate § 134.316(c) When it Decided Whether SSI and PMA are Affiliated Through Negative Control.

SSI argues that OHA violated § 134.316(c) "when it *sua sponte* raised the issue of affiliation through negative control as a matter of first impression." Pl.'s 2nd Mem. at 18 (capitalization modified). In relevant part, § 134.316(c) states that "[t]he [OHA] Judge will not decide substantive issues raised for the first time on appeal[.]" In its decision, the OHA judge concluded that "the issue of affiliation through negative control is appropriately before OHA for review" because "the record reflects that questions of affiliation and negative control were, in fact, raised in prior proceedings." *See* AR 4798.[5] The Court finds that the issues of affiliation and negative control were first raised to the Area Office, and, therefore, OHA did not violate § 134.316(c) when it decided that SSI and PMA are affiliated.

Throughout the dispute over SSI's size, SSI has repeatedly insisted that its relationship with PMA must be evaluated under the general principles of affiliation because it does not qualify for the joint venture exception. *See* AR 3029; AR 3807-08; Pl.'s 1st Mem. at 10 ("OHA should have considered whether SSI and PMA fell under the general rules of affiliation."). The SBA general principles of affiliation state that business concerns are considered affiliates when "one controls or has the power to control the other." 13 C.F.R. § 121.103(a)(1). A business concern is required to include the average annual receipts of its affiliates when calculating its size. *Id*. § 121.104(d)(1). Thus, SSI's argument that it met the size standard for the Solicitation was twofold: first, that it was not required to assume a proportionate share of PMA's receipts because PMA did not meet the criteria for the joint venture exception; and second, that "because [SSI] only owns a minority stake in PMA[] and does not have any direct or indirect control over PMA's operations, the two companies should not be treated as affiliates." AR 3027. Each of these conclusions by the Area Office was equally critical to SSI's being eligible for an award under the Solicitation size standards. Therefore, SSI not only raised the issue of affiliation

---

[5] The Court disagrees with OHA's alternative rationale that § 134.316(c) "is not strictly applicable" because the case was on remand rather than on appeal. AR 4797-98. SSI appealed the Area Office's initial size determination. AR 3799. OHA affirmed that decision on appeal. AR 3909. The Court then vacated OHA's decision, leaving SSI's appeal of the original size determination unresolved. *See Swift & Staley*, 155 Fed. Cl. at 639; 46 Am. Jur. 2d Judgments § 428 (2022) ("A judgment that is vacated . . . on appeal is deprived of all conclusive effect"). Upon remand, OHA could have issued a new appellate decision of the Area Office's initial size determination that was consistent with the Court's opinion. Instead, OHA further remanded to the Area Office for an amended size determination, which OHA then reviewed. AR 3956. This additional wrinkle does not change the fact that OHA was acting in its capacity as an appellate forum, reviewing SSI's appeal of the Area Office's size determination upon remand from this Court. *See* 13 C.F.R. § 121.1002; *id*. § 121.1101 ("Appeals from formal size determinations may be made to OHA"); *id*. § 134.102(k); *see also Tenax Aerospace, LLC*, SBA No. SIZ-5747, 2016 WL 4419571, at *3 (June 6, 2016) ("OHA reviews the size determinations on appeal"). Nevertheless, OHA's erroneous conclusion that § 134.316(c) did not apply to its proceedings on remand is harmless because OHA also determined that § 134.316(c) did not bar OHA from deciding the issue of affiliation between SSI and PMA. *See Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 (Fed. Cir. 2020) (finding remand unnecessary "if there is no reason to believe that the decision would have been different").

between SSI and PMA as part of its arguments to the Area Office but spent a significant portion of its response explaining why SSI and PMA were not affiliated. *See* AR 3029-30 (section titled "Swift & Staley is not affiliated with PMA or Northwind").

Because affiliation includes both affirmative and negative control, 13 C.F.R. § 121.103(a)(3), SSI specifically addressed negative control as a necessary component of its argument that it was not affiliated with PMA. "Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." 13 C.F.R. § 121.103(a)(3). As such, SSI asserted that "while minority shareholders can, in some situations, *exert negative control* over a business, nothing in *PMA's operating agreement* permits [SSI] to take actions like preventing a quorum or blocking actions by the ▮ North Wind board members." AR 3029 (emphasis added).

As part of its initial and amended size determinations, the Area Office reached conclusions on SSI's arguments regarding affiliation, finding that SSI and PMA were not affiliated. *See* AR 3789 ("SSI's minority ownership, while not otherwise creating affiliation between SSI and PMA . . . ."); AR 3980 ("PMA is not an affiliate."). Though the Area Office provided no further analysis on its finding of non-affiliation, SSI itself considered this issue to have been raised to and examined by the Area Office when it argued to OHA on appeal that, "when the Area Office examined the possibility of SSI being affiliated with PMA, it concluded that the relationship 'does not otherwise create[] affiliation.'" AR 3807-08. It is contradictory for SSI to raise the issue of affiliation as part of its arguments in response to the protest, obtain a favorable determination by the Area Office, and rely on the favorable determination in arguing its small business size status to OHA, only to claim later that the issue was not previously raised when OHA decides to consider whether the Area Office's finding of non-affiliation was correct.

Contrary to SSI's arguments and the Area Office's conclusion, OHA determined that SSI and PMA are affiliated through negative control. AR 4798-99. Notably, OHA anchored its conclusion to the exact argument and evidence that SSI presented to the Area Office, finding that despite SSI's contention, PMA's operating agreement does, in fact, permit SSI to prevent a quorum and to block ordinary actions. AR 4799-800; *see* AR 3029. OHA correctly noted that its conclusion was based upon the factual record developed before the Area Office and "thus may properly be decided without need for further investigation." AR 4798; *see Oxyheal Med. Sys., Inc.*, SBA No. SIZ-5707, 2016 WL 692818, at *8 (Jan. 19, 2016) ("OHA's review is based upon the *evidence in the record* at the time the Area Office made its determination.") (emphasis added). Accordingly, based upon the arguments raised by SSI and the record before the Area Office, OHA reversed the Area Office's determination that SSI and PMA are not affiliates. This is consistent with OHA's role as an appellate forum and does not violate § 134.316(c).[6]

---

[6] SSI relies on *Chu & Gassman, Inc.*, SBA No. SIZ-5394, 2012 WL 6155400 (Aug. 27, 2012) to support its argument that "negative control is a substantive issue that cannot be decided by OHA in the first instance" and "reliance upon an issue that was not raised before an area office" violates § 134.316(c). Pl.'s Reply in Supp. of Mot. for J. on Admin. R. at 9-10, ECF No. 66. In *Chu & Gassman*, the OHA judge concluded that, by basing his decision on the issue of negative control, he had "relied upon an issue that had not yet been raised and that this was not in accordance with [§ 134.316(c)]." *Chu & Gassman*, SBA No. SIZ-5394 at *8. This case is distinguishable from *Chu & Gassman* because it is clear from the record that SSI raised the issue of affiliation through negative control to the

8

B.     **OHA's Determination that SSI is Affiliated with PMA through Negative Control was not Arbitrary or Capricious.**

Having established that the issue of whether SSI and PMA are affiliated through negative control was properly before OHA on appeal, the Court turns to SSI's argument that OHA's finding that SSI and PMA are affiliated is arbitrary and capricious. Pl.'s 2nd Mem. at 28. In its decision, OHA found that SSI is affiliated with PMA through negative control because SSI has the ability under the PMA operating agreement to block a quorum and to block several kinds of ordinary actions. AR 4799-800. The Court finds that OHA's finding is not arbitrary or capricious.

OHA's decision that SSI has the ability to exert negative control over PMA based on Sections 5.3.1 and 5.1.6 of the PMA operating agreement has a reasonable basis. "In determining whether affiliation exists, SBA will consider the totality of circumstances and may find affiliation even though no single factor is sufficient to constitute affiliation." 13 C.F.R. § 121.103(a)(5). This Court affords "special deference" to decisions by the OHA due to the SBA's "quasi-technical administrative expertise and a familiarity with the situation acquired by long experience with the intricacies inherent in a comprehensive regulatory scheme." *Baird Corp. v. United States*, 1 Cl. Ct. 662, 666 (1983); *see also Eagle Design & Mgmt., Inc. v. United States*, 57 Fed. Cl. 271, 273 (2002). Further, OHA is required to follow its own precedent, *see* 13 C.F.R. § 134.226(a)(2), and the Court defers to "OHA's interpretation of its own precedent, provided [that] the OHA's interpretation is rational and reasoned[.]" *Precise Sys., Inc. v. United States*, 122 Fed. Cl. 263, 270 (2015) (citing *LB & B Assocs., Inc. v. United States,* 68 Fed. Cl. 765, 772 (2005); *Ceres Envtl. Servs., Inc. v. United States,* 52 Fed. Cl. 23, 37 (2002)).

OHA found that SSI has the ability to exert negative control over PMA because Section 5.3.1 of the PMA operating agreement provides SSI with the "power to prevent a quorum." AR 4799. Under § 121.103(a)(3), "negative control includes, but is not limited to, instances where a minority shareholder has the *ability*, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." [7] OHA observed that "PMA has two Members, North Wind and SSI, and under section 5.3.1 of the operating agreement, '[a]ll [M]embers must be present, in person or in proxy, for meetings of the Members.'" *Id*. Since all members must be present at PMA member meetings, "SSI thus could block a meeting of the Members from occurring . . . by declining to attend the meeting or to participate via proxy." *Id*. Based on the plain text of the regulation and the PMA operating agreement, OHA reasonably concluded that SSI has the ability to prevent a quorum and thus has the ability to exert negative control over PMA.

OHA also found that SSI has the ability to exert negative control over PMA because Section 5.1.6 of the PMA operating agreement allows SSI to block ordinary actions essential to the operation of PMA. AR 4799. "Negative control exists when a minority owner can block

---

Area Office to advance its argument that it was not affiliated with PMA and thus was eligible for contract award. *See* AR 3029.

[7] For the purposes of 13 C.F.R. § 121.103(a)(3), OHA caselaw treats LLC "members" as the equivalent to "shareholders[.]" *See, e.g., S. Contracting,* SBA No. SIZ-5956, at *11.

9

*ordinary actions essential to operating the company.*" *S. Contracting Sols. III, LLC*, SBA No. SIZ-5956, 2018 WL 4492382, at *10 (Aug. 30, 2018) (emphasis added) (citing *Eagle Pharms., Inc.*, SBA No. SIZ-5023, 2009 WL 4492382, at *10 (Jan. 23, 2009)). A minority owner's control over "extraordinary" actions, such as actions intended to protect the investment of minority shareholders, will not result in a finding of negative control. *Team Waste Gulf Coast*, 135 Fed. Cl. at 691; *see also EA Eng'g., Sci. & Tech., Inc.*, SBA No. SIZ-4973, 2008 WL 2958391, at *8-9 (July 14, 2008). OHA acknowledged that "some of the types of actions specified in Section 5.1.6 are 'extraordinary' in nature[.]" AR 4799. However, OHA also identified several actions in Section 5.1.6 as "ordinary actions essential to operating PMA" and which "require[] SSI's advance written agreement." *Id*. These actions include "commencement of any litigation by or on behalf of [PMA;]" "entering into of any real property lease by [PMA] with rental payments in excess of $12,000 during any calendar year[;]" "the grant or issuance of any equity incentives by [PMA;]" and "any pledge or other encumbrance of any property of [PMA] valued at more than $10,000." AR 4799-4800 (alterations in original) (quoting PMA's operating agreement). OHA also acknowledged that "SSI's approval is required for any transaction causing [PMA] to incur any indebtedness beyond that approved by the Members in the annual operating budget or any business plan adopted and approved by the Members." AR 4800 (quotations omitted, alterations in original). These actions in the PMA operating agreement are consistent with the types of actions that OHA has previously deemed to be ordinary actions essential to the operations of a concern.[8] AR 4799. Since SSI has the ability to block such actions, OHA reasonably concluded that SSI has the ability to exert negative control over PMA. AR 4800.

SSI argues that "OHA's conclusion that SSI has the authority to prevent a quorum overlooks that meetings of the members do not even occur and, if they did, the meetings would not address actions that are essential to the daily operations of PMA." Pl.'s 2nd Mem. at 30. However, the relevant inquiry for OHA is whether a minority shareholder "has the *ability*, under the concern's charter, by-laws, or shareholder's agreement," to either "prevent a quorum" or "otherwise block action by the board of directors or shareholders." 13 C.F.R. § 121.103(a)(3) (emphasis added). It does not matter whether a concern exercises its ability to control, "so long as the power to control exists." *Id*. § 121.103 (a)(1); *Darton Innovative Techs. v. United States*, 153 Fed. Cl. 440, 445 (2021). The regulatory language is clear that negative control may be established based on a business concern's "charter, by-laws, or shareholder's agreement" alone. 13 C.F.R. § 121.103(a)(3); *see also Potomac River Grp.*, SBA No. SIZ-5689, 2015 WL 8333939, at *5 (Oct. 21. 2015) (analyzing negative control based on the concern's operating agreement alone and not considering declarations submitted by the concern regarding how the concern operates in practice); *S. Contracting*, SBA No. SIZ-5956 at *10; *Team Waste Gulf Coast, LLC*, SBA No. SIZ-5864, 2017 WL 5659948, at *9 (Nov. 6, 2017); *Washington Patriot Constr., LLC*, SBA No. SIZ-5447, 2013 WL 1784800, at *6-7 (Feb. 11, 2013).

---

[8] OHA has identified several actions that it considers ordinary actions essential for the operation of a company, including "borrowing money, increasing employee and officer compensation, purchasing equipment, amending or terminating lease agreements, alienating or encumbering assets, paying dividends, creating debt securities, controlling operating budgets or incentive plans, and the choosing [of] independent auditors." *Carntribe-Clement 8AJV #1, LLC*, SBA No. SIZ-5357, 2012 WL 2365476, at *15 (June 13, 2012). Additionally, "bringing lawsuits" is also considered an ordinary action. *S. Contracting*, SBA No. SIZ-5956, at *12.

10

SSI also argues that OHA "failed to consider that PMA is a special-purpose entity organized solely to perform the Portsmouth infrastructure support services contract" and that "the actions that OHA identified as ordinary are not actually ordinary actions essential for PMA's operations." *See* Pl.'s 2nd Mem. at 34-37. Yet, SSI does not cite to any caselaw or regulation that requires OHA to consider the purpose of a concern when analyzing affiliation through negative control and whether certain actions that OHA generally considers to be ordinary actions are actually ordinary for a particular entity. As a result, this argument amounts to mere disagreement with how OHA applied its caselaw to PMA's circumstances, which is not sufficient to demonstrate the OHA's decision was arbitrary or capricious.

        **C.**      **It Would Be Inappropriate for the Court to Allow SSI to Supplement the Record with the Declaration of SSI's President.**

In support of its challenges to OHA's determination that SSI and PMA are affiliated through negative control, SSI seeks to supplement the administrative record with a declaration signed by the President of SSI. *See* Pl.'s Mot. to Suppl. SSI claims that the declaration "provides information regarding PMA's performance of the Portsmouth infrastructure support services contract and fills in gaps left by the operating agreement, which was executed nearly six years ago." *Id*. at 4. Because the Court may effectively review OHA's finding that SSI and PMA are affiliated through negative control based on the existing record, the Court finds that supplementation of the record is not needed for effective judicial review.

The role of this Court in reviewing an agency decision is to "apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). Judicial review of an agency decision "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). A motion to supplement the administrative record seeks to add new materials that were not considered by the agency or generated during the decision-making process. *BHB Ltd. P'ship. v. United States*, 147 Fed. Cl. 226, 229 (2020); *see also Joint Venture of Comint Sys. Corps. v. United States*, 100 Fed. Cl. 159, 167 (2011). "The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient." *Price Gordon Servs. v. United States*, 139 Fed. Cl. 27, 50 (2018). Supplementation of the administrative record is limited to situations where "the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom*, 564 F.3d at 1381; *see also Caddell Constr. Co., Inc. v. United States*, 111 Fed. Cl. 49, 93 (2013). For instance, the Court may supplement the administrative record to "correct mistakes and fill gaps," *Iron Bow Techs. LLC, v. United States*, 136 Fed. Cl. 519, 530 (2018), but this Court has rejected supplementation of documents that are "post-hoc contentions of fact and argument[.]" *L-3 Commc'ns EOTech, Inc. v. United States*, 87 Fed. Cl. 656, 672 (2009).

The Court finds that the information contained in the declaration is not necessary for effective judicial review. As noted above, the relevant inquiry for negative control is whether a minority shareholder "has the *ability*, under the concern's charter, by-laws, or shareholder's agreement," to either "prevent a quorum" or "otherwise block action by the board of directors or shareholders." 13 C.F.R. § 121.103(a)(3) (emphasis added). The regulatory language is clear that

this ability may be established based on a business concern's "charter, by-laws, or shareholder's agreement" alone. *Id*. Thus, the Court will not allow SSI to supplement the record with unnecessary information when the Court can effectively review OHA's decision based on the existing administrative record.[9] For the same reason, the Court grants Akima's motion to strike the declaration. *See generally* Def.-Intervenor's Mot. to Strike.

## IV.     CONCLUSION

Because the Court finds that OHA's decision that SSI and PMA are affiliated through negative control is not arbitrary or capricious, the Court affirms OHA's decision that SSI is "not a small business for the instant procurement." AR 4803. "Because proving success on the merits is a necessary element for a permanent injunction," *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 999 (Fed. Cir. 2018), and SSI has not succeeded on the merits, no permanent injunctive relief is warranted. Accordingly, Plaintiff's motion for judgment on the administrative record is **DENIED**, and the Defendant's and Defendant-Intervenor's respective cross-motions are **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly.

Additionally, Plaintiff's motion to supplement the administrative record is **DENIED**, and Defendant-Intervenor's motion to strike is **GRANTED**. The Clerk is **DIRECTED** to **STRIKE** the declaration filed in support of SSI's MJAR, Pl.'s 2nd Mem. Ex. A, ECF No. 57-1.

Some information contained in this Opinion may be considered protected information subject to the Protective Order entered on April 28, 2021. Accordingly, the Opinion is filed **UNDER SEAL**. The parties **SHALL CONFER** and **FILE** on or before **April 14, 2022**, a joint status report that: identifies the information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion.

**IT IS SO ORDERED.**

                                                                                    s/ Thompson M. Dietz
                                                                                    THOMPSON M. DIETZ, Judge

---

[9] Supplementation of the record is also not appropriate here because SSI had the opportunity to submit the declaration, or the information contained within the declaration, directly to OHA for its consideration. *See Enhanced Veterans Sols., Inc. v. United States*, 131 Fed. Cl. 565, 580 n.11 (2017) ("The Court is not persuaded that effective review of a procurement decision requires that the record be supplemented with information an offeror neglected to provide to the procuring agency[.]"); *E.W., Inc. v. United States*, 100 Fed. Cl. 53, 57 (2011).